IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 25-cv-01224-PAB-TPO

DANIELLE MURRAY,

Plaintiff,

v.

T-MOBILE USA, INC.,

Defendant.

---

**ORDER**

---

This matter comes before the Court on Defendant's Partial Motion to Dismiss Plaintiff's Third Claim for Relief in Plaintiff's Amended Complaint [Docket No. 36]. Plaintiff filed a response, Docket No. 40, and defendant filed a reply. Docket No. 41. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## I. BACKGROUND[1]

Plaintiff Danielle Murray began working as an account manager for defendant T-Mobile USA, Inc. in August 2021. Docket No. 26 at 3, ¶ 11. Plaintiff worked out of her home office and interacted almost exclusively with other employees online. *Id.*, ¶¶ 12, 14. In August 2021, defendant instituted a policy mandating that employees working in its office spaces get vaccinated against coronavirus disease 2019 ("COVID"). *Id.*, ¶ 16. This policy was not applicable to employees working remotely or at retail outlets. *Id.*

[1] The facts below are taken from plaintiff's amended complaint, Docket No. 26, and are presumed to be true, unless otherwise noted, for purposes of ruling on defendant's motion to dismiss.

On January 28, 2022, defendant announced a new policy requiring that employees who need access to defendant's office spaces be vaccinated against COVID. *Id.*, ¶ 17. On November 5, 2021, plaintiff requested an accommodation based on her religious beliefs as a Christian and a Catholic to the vaccination requirement. *Id.*, ¶ 18. Defendant acknowledged receipt of plaintiff's accommodation request on November 8, 2021. *Id.*, ¶ 19.

In December 2021, Mike Katz—defendant's executive vice president—announced that all employees in customer facing roles had to get vaccinated against COVID by February 15, 2022. *Id.*, ¶ 20. Employees who had not sought medical or religious accommodations and who were noncompliant with the vaccination requirement would be placed on unpaid leave. *Id.* at 4, ¶ 21. On January 21, 2022, plaintiff inquired about the status of her accommodation request. *Id.*, ¶ 22. On January 28, 2022, Deeanne King—defendant's chief human resources officer—sent an email stating that employees with pending accommodation requests were excluded from being placed on unpaid leave or being terminated. *Id.*, ¶ 24. On February 10, 2022, plaintiff's request for religious accommodation was denied and she was informed that she would be placed on unpaid leave on February 15, 2022. *Id.* at 4-5, ¶ 30. On February 11, 2022, plaintiff submitted an appeal of the decision to place her on unpaid leave. *Id.* at 5, ¶ 37. Plaintiff was placed on unpaid leave on February 15, 2022. *Id.*, ¶ 38. In April 2022, plaintiff was terminated from her employment. *Id.*, ¶ 39. Shortly thereafter, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). *Id.*, ¶ 40.

While plaintiff was waiting for defendant to decide whether her accommodation request would be accepted, she was anxious, tearful, sleepless, and uneasy. *Id.* at 6,

¶ 45. Plaintiff would often cry in the presence of her child. *Id.*, ¶ 46. Plaintiff intermittently experienced nausea, vomiting, abdominal pain, and headaches that she could not attribute to any illness. *Id.*, ¶ 47. Her bouts of anxiety exacerbated back pain from scoliosis. *Id*, ¶ 48.

On April 17, 2025, plaintiff filed this action. Docket No. 1. Plaintiff filed an amended complaint on September 26, 2025. Docket No. 26. Plaintiff brings claims for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, for wrongful termination, for intentional infliction of emotional distress ("IIED"), and for negligent infliction of emotional distress ("NIED").[2] *Id.* at 8-10, ¶¶ 59-84. On January 26, 2026, defendant filed a motion to dismiss plaintiff's IIED and NIED claim. Docket No. 36. On March 3, 2026, plaintiff filed a response. Docket No. 40. On March 16, 2026, defendant filed a reply. Docket No. 41.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the

[2] Plaintiff brings her IIED and NIED claim under a single claim for relief. Docket No. 26 at 10, ¶¶ 81-84. The parties, however, address each claim separately in their briefing on the motion to dismiss. *See generally* Docket Nos. 36, 40.

statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). A court, however, does not need to accept conclusory allegations. *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

## III. ANALYSIS

### A. IIED

To prevail on a claim for intentional infliction of emotional distress, plaintiff must show that "(1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; (3) causing the plaintiff to suffer severe emotional distress." *Han Ye Lee v. Colorado*

*Times, Inc.,* 222 P.3d 957, 966–67 (Colo. App. 2009). "'Outrageous conduct' is defined as conduct that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Culpepper v. Pearl St. Bldg., Inc.,* 877 P.2d 877, 882 (Colo. 1994) (quoting *Destefano v. Grabrian,* 763 P.2d 275, 286 (Colo. 1988)). "[T]he level of outrageousness required is extremely high, and mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient." *Stalder v. Colo. Mesa Univ.*, 551 P.3d 679, 686 (Colo. App. 2024) (internal quotations, alteration, and citation omitted). "Before presenting a claim of IIED to the jury, the district court must rule on the threshold issue of whether the plaintiff has alleged conduct that is extreme and outrageous as a matter of law." *Id.*

Plaintiff argues that the complaint plausibly alleges that defendant engaged in extreme and outrageous conduct. Docket No. 40 at 3-5. In support, plaintiff points to allegations that defendant placed plaintiff on unpaid leave and terminated her employment despite being aware of her religious beliefs regarding the COVID vaccination. *Id.* at 5. This does not constitute extreme and outrageous conduct. "It is well-settled under Colorado law that discharge from employment, without more, is not outrageous conduct." *Morales v. L. Firm of Michael W. McDivitt, P.C.*, 641 F. Supp. 3d 1035, 1039 (D. Colo. 2022) (citing *Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381, 384 (10th Cir. 1988)). In order for termination to rise to the level of outrageous conduct, it "must be combined with other wrongful behavior, such as a physical assault, or extreme harassment, ridicule, and humiliation." *Id.* (citation omitted). Plaintiff alleges no such conduct here. The fact plaintiff was fired despite her religious belief does not

change this analysis, even if plaintiff was fired due to that religious belief. *See LaBrecque v. L3 Commc'n Titan Corp.*, No. 05-cv-00642-REB-MJW, 2007 WL 1455850, at *5 (D. Colo. May 16, 2007) ("Getting fired from a job, even for discriminatory reasons, is not outrageous conduct.") (citing *Grandchamp*, 854 F.2d at 384-85). Therefore, as a matter of law, plaintiff does not plausibly allege that defendant engaged in extreme and outrageous conduct. Accordingly, plaintiff fails to state a claim for IIED.

### B. NIED

To prevail on a claim for negligent infliction of emotional distress, plaintiff must show that "defendant's negligence created an unreasonable risk of physical harm and caused the plaintiff to be put in fear for his or her own safety, that this fear had physical consequences or resulted in long-continued emotional disturbance, and that the plaintiff's fear was the cause of the damages sought." *Draper v. DeFrenchi–Gordineer,* 282 P.3d 489, 496–97 (Colo. App. 2011).

Plaintiff argues that it was negligent for defendant to wait over three months to respond to her request for religious accommodation. Docket No. 40 at 6. Because of this alleged negligence, plaintiff asserts that she suffered from anxiety, sleeplessness, nausea, tearfulness, and shame. *Id.* at 6-7. Plaintiff cites no caselaw for the assertion that it is negligent for an employer to respond to a request for religious accommodation in just over three months. Moreover, plaintiff does not explain how waiting just over three months for a response created an unreasonable risk of physical harm or caused her to be put in fear for her safety. The Court finds that the three-month response time does not plausibly allege an unreasonable risk of physical harm. Moreover, the Court finds that plaintiff does not plausibly allege that defendant's delay in ruling on plaintiff's

request put plaintiff in fear for her safety. Even if plaintiff's fear of losing her job could constitute a fear for her safety, plaintiff does not plausibly allege that she felt fear while waiting for a response to her accommodation request because defendant assured its employees that employees with pending requests for accommodations would not be placed on unpaid leave or terminated. Docket No. 26 at 4, ¶ 24. Indeed, plaintiff was not placed on unpaid leave until after her accommodation request was denied. Accordingly, plaintiff has not plausibly stated an NIED claim.

## IV. CONCLUSION

Therefore, it is

**ORDERED** that Defendant's Partial Motion to Dismiss Plaintiff's Third Claim for Relief in Plaintiff's Amended Complaint [Docket No. 36] is **GRANTED**. It is further

**ORDERED** that plaintiff's third claim for relief is **DISMISSED with prejudice**.[3]

DATED August 18, 2026.

BY THE COURT:

s/ Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

[3] Plaintiff brings her IIED and NIED claim in her amended complaint, Docket No. 26 at 8-10, ¶¶ 59-84, and plaintiff does not ask for leave to amend. The Court finds that amendment would be futile and therefore dismisses plaintiff's IIED and NIED claim with prejudice.